**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HASSANE FAM,

          Petitioner,                  Case No. 2:26-cv-12182

v.                                    Hon. Brandy R. McMillion
                                    United States District Judge

KEVIN RAYCRAFT, *et al*,

          Respondents.

_____/

**OPINION AND ORDER GRANTING**
**WRIT OF HABEAS CORPUS (ECF NO. 1)**

Petitioner Hassane Fam ("Fam" or "Petitioner") has filed a Petition for Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2241, alleging he is being unlawfully detained by Respondents in violation of the Fifth Amendment Due Process Clause, the Immigration and Nationality Act ("INA"), and Respondents' own regulations under 8 C.F.R. §§ 241.4(l)(1) and 241.13(i)(3). *See generally* ECF No. 1. For the reasons below, the Court finds that Fam's continued detention is unlawful and orders his immediate release under conditions Respondents deem necessary. Accordingly, his Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED**.

## I.

Hassane Fam, a citizen of Mauritania, has resided in the United States since he was lawfully admitted in 1997 through a temporary visa he obtained in Senegal. ECF No. 1, PageID.2, 4.  Following the expiration of his visa, Fam was apprehended by immigration officials, charged with inadmissibility, placed into removal proceedings, and he subsequently filed for asylum.  ECF No. 8, PageID.120.  Fam's asylum application was ultimately denied by an Immigration Judge and he was ordered removed from the U.S. to either Mauritania or Senegal.  *See id.* at PageID.121; *see also* ECF No. 8-5.  Fam appealed the IJ's decision to the Board of Immigration Appeals, where it was affirmed, thereby rendering his removal administratively final.  *Id.* at PageID.121.  Nonetheless, immigration officials placed Fam on an order of supervision pending the execution of his removal.  *Id.*

One of the conditions of Fam's supervision order was that he must "assist U.S. Immigration and Customs Enforcement in obtaining any necessary travel documents."  *Id.* at PageID.122; *see also* ECF No. 1-7, PageID.67.  According to Respondents, since 2021, "ICE officers repeatedly asked Fam to provide proof that he was making a good faith effort to obtain a passport or travel document from Mauritania" but he "did not provide proof that he had made any good faith efforts to obtain a Mauritanian passport or facilitate his removal."  ECF No. 8, PageID.122. Respondents maintain that due to Petitioner's alleged failure to "comply with his

2

order of supervision by failing to facilitate his removal in good faith[,]" immigration officials detained him in November 2025 pursuant to 8 U.S.C. § 1231. *Id.* at PageID.123. Petitioner disputes this, contending that "[n]obody ever told [him] that [he] was arrested in November 2025 because [he] failed to comply with ICE's instructions to obtain a Mauritanian passport. If someone had told [him] that, [he] would have told them that [he] followed ICE's instructions and tried to obtain a passport for years, but the Mauritanian Embassy would not give [him] one." ECF No. 9-2, PageID.201.

After ICE arrested Fam during his check-in appointment, he was transported to and detained at the North Lake Processing Center ("North Lake") for about four months. ECF No. 1, PageID.6. Then, he was transferred to detention facilities in Ohio and Texas prior to being transported back to North Lake until June 23, 2026. *Id.* On June 23, immigration officials transferred Fam from North Lake to the Washington Field Office in Chantilly, VA, then to the Mauritanian Embassy in Washington, D.C. so Fam could conduct an interview with embassy officials. *Id.* On or about June 24, Respondents transferred Fam to St. Clair County Jail, where he currently remains detained.

The parties dispute whether, and to what extent, Petitioner has made good-faith efforts during his detention to obtain the necessary travel documents.

> *Compare* ECF No. 1, PageID.7 (Habeas Petition) (cleaned up) ("On several
> occasions during Mr. Fam's detention, Respondents have sought Mr. Fam's

assistance in obtaining travel documents to effectuate his removal. Mr. Fam repeatedly told Respondents that he does not speak English and requires an interpreter. Each time, Respondents determined that Mr. Fam 'refused' to 'make a timely application in good faith for travel documents necessary for departure and complete a travel document application for Mauritania,' and that he 'will not be released from the custody of ICE at this time.'").

*With* ECF No. 8, PageID.124 (Respondents' Response to Habeas Petition) (cleaned up) ("Since Fam has been detained, he has not assisted ICE's attempts to remove him in good faith. In November and December 2025, ICE officials asked Fam to sign paperwork necessary for the agency to obtain a travel document for him. However, each time ICE requested his assistance, he refused. […] Fam's justification for this refusal is that he does not understand the documents. However, the documents he has been asked to sign are applications for a Mauritanian passport. And Fam had reported to ICE that he had made regular attempts to obtain a Mauritanian passport for more than 10 years before he was detained. So, Fam's claim that he does not understand the documents is not plausible to the ICE officials charged with coordinating his removal.").

On June 29, 2026, Fam filed this habeas petition, arguing his prolonged detention violates the INA and the Fifth Amendment pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001), and Respondents' own regulations. He further claims that Respondents' failure to provide him with a Fulani interpreter constitutes an additional due process violation because it deprived Petitioner of "meaningful notice and opportunity to respond." ECF No. 1, PageID.2.

The Court finds that Fam's Petition has been adequately briefed, and a hearing is unnecessary. *See* ECF Nos. 1, 8–9; *see* E.D. Mich. L.R. 7.1(f)(2). Therefore, the Petition is now ripe for decision, and the Court will rule based on the record before it. *Id.*

## II.

Habeas relief is available when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "All agree that absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Habeas relief is equally available to non-citizens being held in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also AARP v Trump*, 145 S. Ct. 1364, 1367 (2025).

## III.

### A. PROPER RESPONDENTS

Petitioner files this action against Kevin Raycraft ("Raycraft"), Director of the Detroit Field Office of ICE's Enforcement and Removal Operations Division; Matt King ("King"), Sheriff of St. Clair County Jail; Markwayne Mullin ("Mullin"), Secretary of U.S. Department of Homeland Security; the U.S. Department of Homeland Security (DHS); Todd Blanche, Acting U.S. Attorney General; and the Executive Office for Immigration Review (EOIR). ECF No. 1, PageID.3–4. In response, the Government contends that Petitioner's claims should be maintained only against "the warden of his detention facility [as] the individual with immediate physical custody over petitioner[,]" or, alternatively, "only the ICE District Director is the proper respondent." ECF No. 8, PageID.128. Petitioner opposes, arguing that

because "ICE routinely moves detainees between districts[, k]eeping all Respondents ensures release even if Mr. Fam is transferred outside Respondent Raycraft's control." ECF No. 9, PageID.195.

In *Roman v. Ashcroft*, 340 F.3d 314, 322, 326 (6th Cir. 2003), the Sixth Circuit held that while "the immediate custodian rule generally applies to alien habeas corpus petitioners" "an exception might be appropriate if the INS were to exercise its transfer power in a clear effort to evade an alien's habeas petitions." *Id*. at 322, 326. The Court finds that here, the exception is applicable given Petitioner's well-founded concern about "ICE's practice of moving detainees between districts." ECF No. 5, PageID.129. Accordingly, keeping Mullin as a party in the case is warranted to ensure that Respondents maintain authority to enforce this Court's grant of habeas relief and order that Petitioner be released even if Petitioner is transferred out of the district under Raycraft's control. The Court will therefore retain King, Raycraft, and Mullin as the proper Respondents in this habeas action and dismiss all remaining named individuals.

## B. *ZADVYDAS* CLAIMS

Petitioner asserts that, under the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), his continued detention by Respondents violates his due process rights because it subjects him to "'potentially indefinite'" detention[.]" ECF No. 1, PageID.12 (citing *Zadvydas*, 533 U.S. at 691). Respondents contend that no

6

violation of Fam's due process rights under *Zadvydas* has occurred "because he cannot show that his removal is not likely in the reasonably foreseeable future." ECF No. 8, PageID.132.  The Court is persuaded by Petitioner's position.

In *Zadvydas*, the Supreme Court "read an implicit limitation into [Section 1231(a)(6)]" based on the view that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689.  To guard against such potentially indefinite detention, the *Zadvydas* Court created a six-month presumption, based on "[its] reason to believe […] that Congress previously doubted the constitutionality of detention for more than six months." *Id.* at 701.  Although the Court did not create a bright-line six-month rule per se, it held that "after [a] 6–month period [of detention], once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*  With that framework in mind, the Court turns to its application here.

First, there is no dispute that Fam has been detained for more than six months, which is beyond the period of presumptive reasonableness.  Second, Fam declares under oath that, before his November 2025 detention, he had already been attempting to obtain his passport from the Mauritanian embassy, but to no avail.

ECF No. 9-2, PageID.201.  Third, Petitioner maintains that his removal to Senegal, as opposed to Mauritania, is not at all foreseeable.  ECF No. 9, PageID.191.  Last, when Petitioner was detained, "the reason stated for revoking Fam's order of supervision was that 'ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you.'" *See* ECF No. 8, PageID.123 (citing ECF No. 8-8).  But that clearly has not "expeditiously" occurred, because he we are.  Considering the foregoing, the Court is satisfied that there is good reason to believe that there is no significant likelihood of Fam's removal in the reasonably foreseeable future.

Accordingly, to continue detaining Fam, Respondents bear the burden of producing evidence sufficient to rebut Petitioner's showing.  And they have not.  At most, Respondents represent that they transported Fam to Washington, D.C. for an interview at the Mauritanian Embassy, which *may* result in the issuance of the travel documents necessary to effectuate his removal.  Notably, according to Fam, he has already been attempting to obtain those same travel documents from the Mauritanian Embassy for several years, without success.  Furthermore, while Respondents claim Petitioner can also be deported to Senegal, all of Respondents' existing efforts to deport Petitioner have been to Mauritania, not to Senegal.  The record is void of any evidence that Respondents have even made an attempt to remove Petitioner to Senegal or that Senegal is willing to accept Petitioner's admission.   Simply

identifying an alternate country of deportation is not enough to establish that it is reasonably foreseeable that Petitioner will be deported there in the reasonably foreseeable future.

Respondents' reliance on *Martinez v. Larose*, 968 F.3d 555 (6th Cir. 2020) is equally unavailing. There, the Court was clear that "[i]f Melara does not prevail in his pending actions before this court and the BIA, nothing should impede the government from removing him to El Salvador." *Martinez*, 968 F.3d at 565. Meanwhile, here, Respondents offer "statement[s that] merely allude to ICE's vague efforts to" obtain Fam's travel documents. *Trung LE v. Goodnough*, No. 26-CV-10563, 2026 WL 879295 (E.D. Mich. Mar. 31, 2026). As in *Trung LE*, the Court rejects Respondents' attempt to impose a heightened burden on Petitioner. *See id.* ("Contrary to Sheriff Goodnough's position, […] *Martinez* [n]ever grafted an 'identifiable barrier' test onto the noncitizen's *Zadvydas* burden.").

Respondents claim that "the Court must reject petitioner's claim that the duration of his detention violates his due process rights" because "Petitioner is a citizen of Mauritania and recently attended an interview with a consular official at the Mauritanian Embassy to obtain a travel document[,]" and "[P]etitioner has not identified any barrier to his removal to Mauritania or Senegal by, for instance, showing that the United States lacks repatriation agreements with either country or that political conditions in either country make removal impossible." ECF No. 8,

PageID.132. Notably absent from Respondents' analysis, however, are facts showing that, because of the consular interview, Petitioner's travel documents are being processed and his removal is therefore imminent. Instead, at most, Detroit Field ERO Deportation Officer, Lauren L. Wynns, attested that "[o]n June 24, 2026, the Mauritanian Embassy in Washington, D.C. completed Fam's interview" and "[a]s of June 29, 2026, ERO Headquarters Removals International Operations stated that the Embassy of Mauritania continues to review, and the issuance of a travel document is still pending." ECF No. 8-2, PageID.153. As of the date of this Order, over a month and half after Petitioner's Mauritanian interview, Respondents have not provided the Court with any updates regarding developments concerning Fam's removal to Mauritania. Further, Respondents have provided no information at all regarding the potential of removal to Senegal, other than to state that Petitioner has been ordered removed there. ECF No. 8, PageID.132 (citing ECF No. 8-5). Therefore, the Court finds that Respondents fail to rebut Petitioner's claim that his deportation is not reasonably foreseeable in the near future.

Based on the record before the Court, Fam's continued detention violates *Zadvydas*. Consequently, Respondents must release him, subject to appropriate conditions of supervision to be determined by Respondents in their discretion:

> Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are

appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions.

*See Zadvydas*, 533 U.S. at 699-700.   The INA and its implementing regulations provide the requisite guidance for imposing appropriate release conditions on noncitizens who are awaiting removal.   *See* 8 U.S.C. § 1231(a)(3); *see also* 8 C.F.R. § 241.4(j).  The statute mandates, among other things, that released noncitizens "obey reasonable written restrictions on [their] conduct or activities" that the Homeland Security Secretary "prescribes for [them]." 8 U.S.C. § 1231(a)(3)(D).

## C.     REMAINING CLAIMS AND REQUESTED FORMS OF RELIEF

Given that the Court has granted the § 2241 Petition as set forth above, the Court need not address Petitioner's remaining claims and forms of relief.

## IV.

Accordingly, the Court **DISMISSES** the Petition against Respondents Todd Blanche, DHS, and EOIR.  Hassane Fam's Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED**.  Respondents are **HEREBY ORDERED** to immediately release Hassane Fam under reasonable conditions of supervision as determined by Respondents no later than **August 19, 2026**.

**IT IS FURTHER ORDERED** that Respondents shall file a Status Report with this Court on or before August 24, 2026, to certify compliance with this Order.

11

The Status Report shall include whether Petitioner is still detained, and the reasons for his continued detention.

**IT IS SO ORDERED.**

Dated: August 12, 2026                          s/Brandy R. McMillion
       Detroit, Michigan                      Hon. Brandy R. McMillion
                                    United States District Judge